FILED
2016 Aug-08  PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **BRENDA GAY ANGLE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 4:13-CV-738-RDP** |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner of the Social Security** } | |
| **Administration,** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Brenda Gay Angle brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability and disability insurance benefits ("DIB").  *See also*, 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff originally filed her disability and DIB application on April 14, 2010, in which she alleged that her disability began on March 1, 2007. (Tr. 70). This application was initially denied by the Social Security Administration on June 21, 2010. (Tr. 106). Plaintiff subsequently filed a request for a hearing (Tr. 113), and a hearing was conducted on June 26, 2012, before Administrative Law Judge Joseph F. Dent ("ALJ Dent"). (Tr. 70). On August 2, 2012, ALJ Dent determined that Plaintiff was not under a disability within the meaning of the Act from March 1,

2007, through her date last insured, December 31, 2008. (Tr. 70, 72). Administrative Appeals Judge Joel Krafsur denied Plaintiff's request for review of ALJ Dent's decision on February 19, 2013. (Tr. 87). Defendant subsequently filed a Motion for Remand to this court on September 3, 2013, under Sentence Six of § 205(g) of the Act, due to portions of the June 6, 2012, hearing being inaudible and unusable as a reviewable certified record. (Tr. 94). This court granted that motion on September 4, 2013, and the case was remanded to the Commissioner for further proceedings in order to complete the record. (Tr. 94-95).

Meanwhile, on April 8, 2013, Plaintiff filed a separate application for SSI benefits. (Tr. 98). On May 7, 2013, the State Disability Determination Service ("DDS") issued a favorable determination, finding that Plaintiff was disabled commencing April 8, 2013. (*Id.*). However, on November 13, 2013, when considering this court's remand order, Administrative Appeals Judge Kenneth Matheny found that a determination of Plaintiff's disability prior to April 8, 2013, required further administrative proceedings. (*Id.*). The decision of the Commissioner was vacated and the case was remanded in accordance with the orders of the court. (*Id.*).

On June 16, 2014, Administrative Law Judge Mary E. Helmer ("ALJ Helmer") entered a decision on the remanded case, affirming the State Agency's original determination that Claimant was not under a disability within the meaning of the Social Security Act from March 1, 2007, through her date last insured of December 31, 2008. (Tr. 34). Plaintiff filed exceptions to that decision, and on July 13, 2015, Plaintiff's request for review was denied. (Tr. 1). After this review was denied, ALJ Helmer's ruling became the final decision of the Commissioner (Tr. 2), making it a proper subject for this court's review.

2

## II.     Facts

Plaintiff was fifty-eight years old at the time of the first hearing before ALJ Dent (Tr. 74), and sixty years old at the time of the second hearing before ALJ Helmer. (Tr. 5). Plaintiff alleges that she has been disabled since March 1, 2007, due to severe COPD, asthma, chronic bronchitis, short term memory impairment, hypertension, severe depression, anxiety with panic attacks, and insomnia. (Tr. 5). Records also indicate that Plaintiff suffers from irritable bowel syndrome, gastroduodenitis, and hemorrhoids (which have been treated by surgery). (*Id.*). Plaintiff's date last insured was December 31, 2008. (Tr. 38).

From 1976 to 1989 Plaintiff worked as a trimmer and supervisor for a rubber tire company. (Tr. 351). She subsequently worked as a color line operator for a fiber-optic cable company from 1989 to 2000. (*Id.*). After working as a nurse's aide at a nursing home from 2001 to 2003 and as a saw operator for Tyson's poultry from 2005 to 2006, she was employed in her final job, as a cashier and cook at a gas station, from 2006 to 2007. (*Id.*).

Plaintiff testified that in March 2007, while she was working full-time as a gas station cashier and cook, she began to experience stomach problems. (Tr. 54). She stated that these issues caused her to take three to five bathroom breaks per eight hour shift, ranging from fifteen to thirty minutes in duration. (Tr. 55). Plaintiff claimed that she was occasionally unable to make it to the bathroom on time. (*Id.*). Although she sometimes had stomach cramps that warned her of a bowel movement, she testified that sometimes she had no warning at all. (Tr. 57).  Although her bowel problems were not physically painful, she testified they were emotionally taxing due to the love she had for her job and her reluctance to quit. (Tr. 57-58). Prior to December 2008, Plaintiff also claimed to have breathing issues and began feeling tired and worn out. (Tr. 55).

Plaintiff testified that these illnesses caused her to quit her job in 2007 and that her symptoms continued throughout 2008.[1] (Tr. 55-56).

On January 15, 2007, Dr. Daniel noted that during a visit Plaintiff had reported shortness of breath, cough, wheezing, diarrhea, blood in stool, hemorrhoids, frequency in urination, lower back pain, and numbness in legs. (Tr. 520). At the time, the only medicine Plaintiff was taking Prilosec OTC for heartburn. (*Id.*). Plaintiff also saw Dr. Daniel on January 16, 2007, when he essentially noted the same ailments as before. (Tr. 525). On January 30, 2007, Dr. Smith performed an upper endoscopy and colonoscopy on Plaintiff, which she tolerated well. (Tr. 396). In a February 7, 2007, letter, Dr. Smith noted that Plaintiff's procedures showed nothing particularly remarkable, though there were signs that she had diverticular disease in the sigmoid colon. (Tr. 531). Plaintiff testified that she did not seek additional treatment for over a year, but instead attempted to address her problems by changing her diet, under orders from her doctor.[2] (Tr. 58). Additionally, prior to 2008, Plaintiff did not seek treatment for COPD or shortness of breath. (Tr. 184). She testified that she sought to deal with the illness herself before going to a doctor. (*Id.*). However, she stated that her condition continued to deteriorate. (Tr. 58).

Plaintiff next sought treatment almost two years later when she visited Jacksonville Medical Center on December 18, 2008. She complained of constipation and uncontrollable diarrhea for several months, and feeling a "knot" in her chest when she ate. (Tr. 532). The treating physician, Dr. Barrette, noted Irritable Bowel Syndrome, rectal bleeding, and gastroesophageal reflux disease. (Tr. 533). Plaintiff's medical history listed shortness of breath,

---

[1] Based upon Plaintiff's hearing testimony (Tr. 56), ALJ Dent's 2012 review (Tr. 72) and ALJ Helmer's 2010 review (Tr. 36) found that Plaintiff did not engage in substantial gainful activity starting in March 2007. However, Plaintiff's work history report indicates that Plaintiff worked as a gas station cashier and cook through 2008. (Tr. 351).

[2] Although Plaintiff testified that she received these instructions from her doctor, no specific information could be found in the record as to the identity of this doctor or the details of his dietary instructions or diagnosis. It is possible that this a reference to Dr. David, who counseled her on January 15, 2007. (Tr. 522).

bronchitis, bowel irregularity, and depression. (Tr. 537). Plaintiff then underwent several surgeries, including an esophagogastroduodenoscopy and colonoscopy on January 6, 2009 and a stapled hemorrhoidectomy on January 12, 2009. (Tr. 540, 551). Plaintiff tolerated both procedures well. (Tr. 541, 552). Plaintiff testified that she did not seek treatment from a doctor again until January 2010, when she saw Dr. Patel.[3] (Tr. 58-59).

Dr. Patel conducted a complete pulmonary study on the on January 18, 2010. (Tr. 403). In his findings, Dr. Patel stated that while her heart was within normal limits, there might be representations of pulmonary arterial hypertension, mild infiltrates, generalized kyphosis, and an element of chronic obstructive pulmonary disease ("COPD"). (Tr. 406). Dr. Patel also found that her FEV, and FVC levels suggested severe obstructive lung disease and severe hyperinflation. (Tr. 408). On February 8, 2010, Plaintiff again visited Dr. Patel, where he observed COPD, chronic bronchitis, cough, abnormal PFTs, and hypoxemia. (Tr. 413). Dr. Patel recommended that she continue taking Wellbutrin, Advair, and Spiriva, and indicated the importance of long-term smoking cessation. (*Id.*).

At Plaintiff's April 30, 2010 visit with Dr. Patel, he diagnosed Plaintiff with COPD, coughing, and wheezing after she complained of two weeks of worsening shortness of breath. She made similar complaints on her visits to Dr. Patel on July 27, 2010, where she was diagnosed with Chronic bronchitis, COPD, and depression, and February 8, 2010, where she was diagnosed with COPD with chronic bronchitis. (Tr. 416-417). Chest x-rays on February 11, 2010, were compatible with the diagnosis of COPD and pulmonary arterial hypertension. (Tr. 418). Plaintiff also presented these symptoms on August 8, 2011. (Tr. 422). Dr. Patel again diagnosed COPD and chronic bronchitis. (*Id.*). Plaintiff reported serious shortness of breath and asthma due to walking and exertion on March 20, 2012 and September 27, 2012. (Tr. 507-514).

---

[3] The record actually indicates Dr. Patel first saw Plaintiff on December 29, 2009. (Tr. 456).

During this last visit she was placed on supplemental oxygen to increase the oxygen saturation in her blood. (Tr. 513).

In addition to these physical illnesses, on November 15, 2011, Plaintiff underwent a psychiatric evaluation at Calhoun-Cleburne Mental Health Center.  (Tr. 424).  She complained of depression, low mood, poor sleep, poor appetite, frequent crying, and low energy. (*Id.*).  She attributed her worsening mental state to her son, who had attempted to commit suicide two years previously and had recently been incarcerated. (*Id.*). Plaintiff completed additional therapy and evaluations for depression through August 20, 2012. (Tr. 504).

In an undated note, Dr. Patel stated that Plaintiff's had been disabled due to her pulmonary condition since her first visit on December 29, 2009, and that she had symptoms more than 24 months prior to that visit. (Tr. 456). However, Dr. Anderson, a medical expert who testified during the 2014 hearing, stated that while Plaintiff had gastro esophageal reflux disease, diverticular disease of the colon, intermittent but frequent constipation and diarrhea, and possible irritable bowel syndrome in the period prior to December 31, 2008, and would have shown symptomology of "severe chronic obstructed pulmonary emphysema due to smoker's bronchitis" between March 2007 and December 2008, she nevertheless would have been able to do light work and would not meet the listings for disability during this time period. (Tr. 59-60).

## III.     The ALJs' Decisions

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).    Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In both the first and second determinations of this matter, the respective ALJs determined that Plaintiff did not engage in substantial gainful activity from her alleged onset date of March 1, 2007, through her date last insured of December 31, 2008, in accordance with 20 C.F.R. § 404.1520(a)(4)(i). (Tr. 36, 72). While both ALJs agreed that through the date last insured Plaintiff suffered from the severe impairment of "diverticular disease in the sigmoid colon associated with hemorrhoidal disease," the second ALJ determined that during that period she also suffered from gastroesophageal reflux disease and inflammatory bowel syndrome, which are also both severe impairments. (Tr. 36, 73). Both ALJs acknowledged that Plaintiff had been diagnosed with chronic obstructive pulmonary disease, chronic bronchitis, and depression, but noted that she was diagnosed with these illnesses over a year subsequent to her date last insured of December 31, 2008. (Tr. 36-37, 72-73). Regardless, both ALJs concluded Plaintiff had a severe impairment that fulfilled the second requirement under 20 C.F.R. § 404.1520(a)(4).

Both ALJs also determined that Plaintiff's impairments did not meet or equal the severity of a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1 through her date last insured. (Tr. 37, 73). In the first determination ALJ Dent considered Listing Section 5.00 Digestive System, while in the second determination ALJ Helmer considered both Listing Sections 3.00 Respiratory System and 5.00 Digestive System. (Tr. 37, 73). However, neither ALJ found that evidence supported the requisite findings required by the listing sections. (Tr. 37, 73). Additionally, both ALJs determined that the entirety of Plaintiff's impairments combined did not meet or equal a listing. (Tr. 37, 73). Thus, Plaintiff could not be considered disabled under the requirements of 20 C.F.R. § 404.1520(d).

Next, the ALJs considered the fourth step, 20 C.F.R. § 404.1520(a)(4)(iv), which concerns a claimant's capacity to perform past relevant work. Both ALJs determined that

Plaintiff could perform certain kinds of work as defined in 20 C.F.R. § 404.1567. (Tr. 37, 73). While ALJ Dent found that Plaintiff could perform less than the full range of medium work as defined by 20 C.F.R. § 404.1567(c), in the later determination, ALJ Helmer found that she had the ability to perform light work as defined by 20 C.F.R. § 404.1567(b). (Tr. 37, 73). Both ALJs found that Plaintiff's testimony regarding her pain and disablement were not sufficiently supported by the objective medical evidence. (Tr. 43, 80). However, the ALJs differed in their findings as to whether Plaintiff could perform past work. ALJ Dent found in 2012 that Plaintiff was unable to perform any past relevant work, though she could perform other work in the economy. (Tr. 46-47). ALJ Helmer found in 2014 that Plaintiff could still preform her previous work as cook and cashier. (Tr. 81-82). Both of these findings were based on Vocational Expert testimony. (Tr. 46-47, 81-82).

A portion of the testimony of the Vocational Expert in the 2012 determination, Dr. Williams, was inaudible. (Tr. 193-196). However, ALJ Dent stated in his decision that Dr. Williams testified that Plaintiff's performance of past jobs would be precluded. (Tr. 81). But a different Vocational Expert, Dr. Cosgrove, found in 2014 that Plaintiff could work in her previous jobs of cook and cashier despite her illness, unless she was required to exceed regular break periods. (Tr. 61-62). If her impairment required her to take more frequent breaks, Dr. Cosgrove testified that past work and work in the competitive workplace would be precluded. (Tr. 62).

ALJ Helmer's analysis ended there. However, ALJ Dent continued on to the fifth step (under 20 C.F.R. § 404.1520(a)(4)(v)), and found that jobs existed in the national economy that Plaintiff could perform even though she could not preform her past relevant work. (Tr. 81-82). Again, this was at least in part attributable to Dr. Williams's testimony that ALJ Dent's

conclusion indicated Plaintiff could successfully adjust to other work in the national economy. (Tr. 82). While the findings of the ALJs differed in these respects, ultimately, they both concluded that Plaintiff was not under a disability between March 1, 2007 and December 31, 2008. (Tr. 47, 82).

## IV.    Plaintiff's Argument for Reversal

Plaintiff presents four arguments on appeal: (1) Both a State Disability Determination Service's conclusion of disability and ALJ Dent's conclusion about Plaintiff's inability to perform her past work is *res judicata* and precludes ALJ Helmer's determinations to the contrary (Pl.'s Mem. 16); (2) the ALJs failed to consider all of Plaintiff's severe impairments. (Pl.'s Mem. 20); (3) Plaintiff meets listing 3.02 (Pl.'s Mem. 14); and (4) that the ALJs failed to accord proper weight to Dr. Patel, the treating physician, and failed to state sufficient reasons for rejecting Dr. Patel's opinion (Pl.'s Mem. 17).

## V.    Standard of Review

The only real issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id.* (citing *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Questions of law before this court are reviewed *de novo*. *Atkins v. Comm'r, Soc. Sec. Admin.*, 596 F.App'x 864, 867 (11th Cir. 2015).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.   Discussion

After careful review, and for the reasons stated below, the court concludes that both ALJs' findings challenged in this case are supported by substantial evidence and the determinations denying benefits are due to be affirmed.

### A.      Plaintiff's *Res Judicata* Argument

Plaintiff first argues that ALJ Helmer's finding that Plaintiff could perform her past work is precluded under the doctrine of administrative *res judicata*. (Pl.'s Mem. 16). Plaintiff also claims that because the State Disability Determination Service ("DDS") found on May 7, 2013, that she was disabled commencing April 8, 2013 (the date that she filed her claim), *res judicata* prevents ALJ Helmer from finding no disability in the present case. (*Id.*). Questions of law, such as the application of *res judicata*, are reviewed *de novo*.[4] *Atkins*, 596 F.App'x 864, 867.  The court addresses those in reverse order.

_____

[4] Defendant appears to contend that it is not this court's role to determine whether this decision is consistent with a vacated decision, but only whether substantial evidence supports ALJ Helmer's decision. (Def.'s

Under 20 C.F.R. § 404.957(c)(1), administrative *res judicata* is applicable only when the agency has made a "previous determination or decision ... about [a claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision [had] become final by either administrative or judicial action." *McKinzie v. Comm'r of Soc. Sec.*, 362 F.App'x 71, 73 (11th Cir. 2010) (citing 20 § C.F.R. § 404.957(c)(1)). In *McKinzie*, the court found that there was no error on the part of an ALJ who "declin[ed] to give preclusive effect or deference" to a prior administrative finding when "the instant application concerned an unadjudicated time period." 362 F.App'x at 73.

Much like in *McKinzie*, the DDS determined that Plaintiff had been disabled commencing April 8, 2013. (Tr. 33). ALJ Helmer's determination dealt with a completely different question – whether Plaintiff was disabled at any time from March 1, 2007 (the date that she alleged her disability began), to December 31, 2008 (the date on which she was last insured). (Tr. 34). Because this range falls well outside the scope of the DDS adjudication, administrative *res judicata* cannot bar ALJ Helmer from finding that Plaintiff was not disabled because the 2013 decision did not concern Plaintiff's rights on the same issues under 20 C.F.R. § 404.957(c)(1).

Additionally, to the extent Plaintiff contends that ALJ Dent's August 2, 2012 decision, which found that Plaintiff could not perform her past relevant work (Pl.'s Mem. 16; Tr. 81) is barred, the court disagrees.[5] Administrative *res judicata* applies when a previous determination or decision "has become final by either administrative or judicial action." 20 C.F.R. §

---

Mem. 29). This assertion is incorrect, as questions on legal determinations are clearly within the scope of this court's authority.

[5] The court also notes that, if Plaintiff were successful in persuading *res judicata* to the 2012 finding by ALJ Dent that Plaintiff was unable to perform past relevant work, it also might logically follow that ALJ Dent's determination that Plaintiff could perform work in the national economy, which led to a finding of no disability, would also be within the realm of *res judicata*. Such a finding would potentially be fatal to Plaintiff's overall case.

404.957(c)(1). A vacated ruling is not a final judgment on the merits of the case. *Atkins*, 596 F.App'x at 868 (citing *Quarles v. Sager*, 687 F.2d 344, 346 (11th Cir. 1982) (holding that claim preclusion does not apply when a district court's judgment was vacated); *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992) (determining that a judgment that has been vacated, reversed, or set aside has no conclusive effect with regards to *res judicata*.) The same holds true with respect to a ruling that has been remanded. In this case, the claims at issue never was the subject of a final judgement on the merits. Indeed, the very fact that this court is hearing this appeal now evidences that there has been no final judgment on these issues. Nothing required the ALJ to decline to give effect to an earlier decision. *Atkins*, 596 F.App'x at 868. Very little distinguishes this case from *Atkins* with respect to the application (or non-application) of *res judicata*. ALJ Helmer did not err by disregarding ALJ Dent's findings or holding.

The statutes cited in Plaintiff's brief do not support her argument of administrative *res judicata*. Both these statutes and 20 C.F.R. § 404.987-989 define the procedure to reopen an ALJ's final determination, list the conditions for reopening a determination or decision, and provide examples of good cause for the reopening of a determination or decision. But none of legal principals apply here because in this case there has been no final decision on the merits. The DDS's decision is factually discrete from ALJ Helmer's decision, and ALJ Dent's determination was remanded by this court and thus cannot be considered final.

Plaintiff also points to *Draper v. Sullivan*, 899 F.2d 1127 (11th Cir. 1990), and *Berryman v. Massanari*, 170 F.Supp. 2d 1180 (N.D. Ala. 2001), in support of her contention that an initial determination is subject to administrative *res judicata*. But again, these cases are largely inapposite. *Draper* concerned the SSA's attempts to decrease an award of a plaintiff's worker's compensation benefits, which had previously been adjudicated by an ALJ. *Draper*, 899 F.2d at

1128-1130. That decision, unlike the case at hand, involved a final determination that was not appealed beyond the ALJ's decision (much less remanded).

*Berryman* concerned a second hearing during which the ALJ exceeded the scope of review which had been explicitly framed by the Appeals Council in its remand decision. *Berryman*, 170 F.Supp. 2d at 1184. On review, the district court concluded that the original ALJ awarded SSI benefits to the claimant based on her meeting of Listing 3.02(A), and the Appeals Council had remanded the case for the very specific purpose of determining whether the claimant was disabled before the date last insured in order to qualify for disability insurance. (*Id.*). The Appeals Council did not vacate that portion of the ALJ's ruling awarding SSI benefits, which included the meeting of the Listing. (*Id.*). The court in *Berryman* found that because the award of SSI was not vacated, and because there was no evidence in contrast to the finding that the Listing was met prior to the date last insured, the subsequent decision of the ALJ was not supported by substantial evidence. (*Id.* at 1185-1187). This last point is key; the issue in *Berryman* was one of overcoming the burden of substantial evidence established by the unvacated portion of the original decision, not an administrative *res judicata* bar to reconsideration of their earlier determination. At best, *Berryman* requires this court to ask whether substantial evidence supports the second ALJ's findings challenged in this appeal. It does not support any application of administrative *res judicata* principals.

### B.   The Ruling of ALJ Helmer was Within Her Scope of Authority Under a Sentence Six Remand

Plaintiff's reliance on *Berryman*, however, raises a more nuanced issue that this court must address. Whether, under a Sentence Six remand of 42 U.S.C. § 405(g), ALJ Helmer exceeded the scope of her authority in finding, contrary to ALJ Dent, that Plaintiff could perform previous work? This question exists independent from any assertion of administrative *res*

*judicata*. While the Appeals Council in *Berryman* expressly limited the scope of review on remand to a specific issue, the scope of review in the case at hand is more questionable, especially given ALJ Helmer's decision to not rule on Plaintiff's capacity to participate in jobs in the national economy as a whole.[6]

The court notes that ALJ Helmer's decision is contrary to ALJ Dent's determination with regards to Plaintiff's ability to perform her previous jobs. The court also acknowledges that ALJ Helmer did not explain fully those differences between her judgment and that of ALJ Dent. However, it still cannot be said ALJ Helmer's decision on this issue clearly falls outside the scope of her authority. *Atkins v. Comm'r of Soc. Sec*, 596 F.App'x 864, 866 (11th Cir. 2015). In *Atkins*, a Sentence Six remand was ordered by the court due to an evidentiary problem similar to the one in this case. On remand, the new ALJ contradicted the determination of the previous ALJ (who found that the claimant was disabled for a certain period). *Id.* The new ALJ determined that the claimant was not disabled for any period of time. *Id.* The claimant argued that such a contrary determination violated his right to procedural due process, claiming that a re-examination of issues not raised on appeal violated the notice requirements in *Kennedy v. Bowen*. *Atkins v. Comm'r of Soc. Sec*, 596 F.App'x at 867. The Eleventh Circuit disagreed.

The panel in *Atkins* distinguished the circumstances of a Sentence Six remand from the situation addressed in *Kennedy*, which involved the Appeals Council expanding the scope of its review of an appeal on its own initiative. *Id.* The court acknowledged that a notice requirement was key to the circumstances in *Kennedy*, and such specific notice did not apply to a Sentence Six remand. *Id*. In finding that 20 C.F.R. § 404.983 governed, the court found that because "any

---

[6] While a ruling at this step is not technically required when it is found that the claimant can return to her old work, unique circumstances such as a Sentence Six remand certainly may warrant the exploration of these issues, especially when the subsequent adjudicator issues a decision contrary to the original ALJ in certain respects, as occurred in this case.

issues relating to the [claimant's] claim may be considered by the administrative judge whether or not they were raised in the administrative proceedings leading to the final decision" when the case is remanded by the Appeals Council. *Id.* (quoting 20 C.F.R. § 404.983). Consideration on remand is not subject to the same limitations as consideration on appeal. The Appeals Council in the case at hand complied with this court's order to remand the case for further deliberation. As such, ALJ Helmer, on remand, was authorized to consider issues related to Plaintiff's claim. There was no error.

### C. The Court Examines the Record as a Whole to Determine Whether Substantial Evidence Supports the ALJ Decision

The court next looks to the record and both decisions rendered by both ALJ Dent and ALJ Helmer to determine whether their respective findings are supported by substantial evidence as required by 42 U.S.C. § 405(g). That is, this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Lacina v. Comm'r of Soc. Sec.*, 606 F.App'x 520, 525 (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (internal quotations omitted). Substantial evidence is  "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Lacina*, 606 F.App'x at 525 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

Even more to the point, this court does not simply consider the record as it is frozen at any particular point in time during this case's procedural history. Rather, this court must analyze "the record as a whole."  *Lacina*, 606 F.App'x at 525. The "record as a whole" also includes evidence from subsequent proceedings, including the testimony of the second vocational expert during the second hearing, and that opinion testimony may in fact serve as substantial evidence in this record. While ALJ Dent's decision was not *based* on information from this second

hearing, which obviously occurred after his decision was made and vacated, his findings are *supported* by the information presented in that later hearing. Under 42 U.S.C. § 405(g), it is not necessary for this court to mechanically link substantial evidence to ALJ Dent's reasoning, which must simply be "reasonable." *See id*. Indeed, the plain text of the statute reflects this, stating that the *findings* of the Commissioner must be *supported*, with no mention of evaluation of the *reasoning* behind those findings or requirements that such findings be *based on* or *arise from* substantial evidence. As such, substantial evidence obtained after the initial hearing may be used by this court to affirm the ruling of ALJ Dent, so long as it is part of the record "as a whole."

### D. Substantial Evidence Supports the Findings of both ALJ Dent and ALJ Helmer

Substantial evidence in the record as a whole supports the findings of both ALJ Dent and ALJ Helmer. Substantial evidence may support an ALJ's decision even if this court believes the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Both ALJ Dent and ALJ Helmer found that Plaintiff did not engage in substantial gainful activity between March 1, 2007, and December 31, 2008. (Tr. 36, 72). This is corroborated by various substantial evidence, particularly a history of her earnings. (Tr. 291-301). Both also determined that Plaintiff suffered from severe impairments during the relevant period (Tr. 36, 72). Various medical reports confirm that she indeed suffered from these serious illnesses, particularly records from her complaint to Dr. Barrette on December 18, 2008. (Tr. 532-539). And both ALJ Dent and ALJ Helmer agreed that Plaintiff did not fulfill the criteria necessary to meet an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37, Tr. 73). That is, both ALJs compared her medical history to the specific signs, symptoms, and findings required in the Listing and determined that she did not have such an impairment, nor did

her impairments as a whole equal a listing. (*Id.*). The record evidence regarding Plaintiff's treatment history during the relevant period, including the listing of her symptoms and diagnoses (Tr. 532-539), supports these findings. (Tr. 37, 73). Indeed, for the reasons discussed below, that record evidence well exceeds the threshold required for substantial evidence. In fact, Plaintiff's representative did not argue that her impairments met a listed requirement in either instance. (*Id.*).

While ALJ Dent's and ALJ Helmer's findings on the first three steps are in agreement, they parted ways with regard to Plaintiff's ability to work. ALJ Dent determined that Plaintiff was unable to perform any past relevant work, but concluded that she could perform other work that exist in the economy. (Tr. 81-82). ALJ Helmer, on the other hand, determined that Plaintiff's residual functional capacity enabled her to perform her previous work as a cook or cashier.[7] (Tr. 46-47). These alternative findings are each supported by substantial evidence.

Plaintiff bears the burden of showing that she cannot return to her past relevant work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). This court must defer to determinations regarding Plaintiff's credibility so long as they are supported by substantial evidence. *See James v. Astrue*, 288 F.App'x 673, 675 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)). In their respective determinations, the ALJs found that while Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms," her statements "concerning the intensity, persistence, and limiting effects of these symptoms" were not totally credible. (Tr. 41, 76). In assessing a claimant's claim, an ALJ will consider testimony with regards to how symptoms affect her ability to work and function. 20

---

[7] While ALJ Helmer did not explicitly make a decision on Plaintiff's ability to perform other jobs in the economy, she effectively ruled on this issue in finding that Plaintiff could work as a cashier or a cook. Because Plaintiff can perform these jobs, and these jobs are a part of our national economy, it is logical to assume that Plaintiff is capable of performing jobs in the economy.

C.F.R. § 404.1529(a). These statements regarding the intensity and persistence of symptoms must be evaluated in the context of all available evidence, including medical history or other statements. 20 C.F.R. § 404.1529(c)(1). Those factors considered include, but are not limited to, a claimant's daily activities, aggravating factors, medication, and treatment received. 20 C.F.R. § 404.1529(c)(3)(i-vii).

Plaintiff received treatment from Dr. Smith in January 2007, before the alleged onset of her disability, complaining of bloody bowel movements. (Tr. 396-401). While a colonoscopy indicated diverticular disease within her sigmoid colon and some significant hemorrhoidal disease, Dr. Smith indicated that Plaintiff tolerated the procedure well and had no other significant ongoing medical problems. (Tr. 396-397, 401). Nothing in the record indicates the severity or frequency of these issues at that time, nor that she was unable to work. Plaintiff did not seek treatment during her alleged period of disability until December 18, 2008. At that time, she presented to Dr. Barrette complaining of constipation and uncontrollable diarrhea. (Tr. 532). Dr. Barrette diagnosed Irritable Bowel Syndrome, rectal bleeding, and gastroesophageal reflux disease. (Tr. 533) These illnesses eventually warranted the following procedures undertaken in January 2009: esophagogastroduodenoscopy, colonoscopy, and stapled hemorrhoidectomy. (Tr. 540, 551). However, no records related to these procedures indicate an actual medical diagnosis of uncontrollable diarrhea in the months prior to the procedures. Rather, only Plaintiff's self-reported complaints upon intake support that assertion. (Tr. 532).

Besides her own testimony and complaints to her doctors, Plaintiff has provided virtually no evidence that her stomach issues rose to such a debilitating level that she could not work. Plaintiff's function report indicated that she claims to have unexpected bowel movements. But, of note, virtually all of her complaints with regard to ability to work arise from her alleged

breathing issues (and, as discussed above, those are outside of the relevant timeframe). (Tr. 340-347). Consistent with her testimony, Plaintiff wrote in the report that she had to wear diapers for the last several years and needed to use the bathroom several times before lunchtime. (Tr. 347). Plaintiff testified that her bowel problems were not physically painful and that she "always had some kind of warning" so that she never had any "accidents" when working. (Tr. 57-58, 186). Eventually, she felt that she was not "doing myself or the public any favors," which motivated her to quit her job. (Tr. 54). But, again, the only evidence as to these claims comes from Plaintiff herself, with no corroboration from any third party. Plaintiff testified that she had some "real good people" working with her to help her through troubles, but there is no supporting evidence or testimony from any of these potential witnesses. (*Id.*).

Dr. Anderson, a medical expert, testified that while Plaintiff would have experienced "intermittent but frequent constipation and diarrhea," she would not meet a Listing during the relevant period and could perform light work activity. (Tr. 59-60). Based on Plaintiff's testimony, medical history, and various other information in the record, Dr. Cosgrove, the vocational expert, stated that a person with Plaintiff's vocational profile could work as a cook or cashier if she did not exceed permitted limitations on breaks on a regular basis. (Tr. 62). Specifically, Dr. Cosgrove stated that her past work, and work in the competitive workplace, would be eliminated if she required more than the "15 minute break per person per session of workday morning, customary lunch break, and a similar break in the afternoon." (*Id.*). Moreover, Dr. Cosgrove opined that a hypothetical person like Plaintiff, who required unscheduled breaks three to five terms per shift, would also be precluded from working. (Tr. 63). With no other relevant evidence present, and a complete lack of an actual medical diagnosis indicating a

disability in connection to her bowel issues, the decisions of ALJ Dent and ALJ Helmer with respect to her ability to work are supported by substantial evidence.

Plaintiff must show that her disabilities preclude her from working. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). The record below confirms that she has not presented such evidence, ALJ Dent and ALJ Helmer were justified in reaching their respective determinations. Here, both expert testimony and the ALJ's credibility findings regarding Plaintiff's unsubstantiated claims of the intensity and frequency of her illness, were based upon substantial evidence and support the ALJs' findings.

### E.   ALJ Helmer Properly Disregarded the Testimony of Dr. Patel

Plaintiff also contends that the testimony of her treating position, Dr. Patel, was not given proper weight and that the ALJ's reasoning for rejecting his opinion was insufficient. The opinion of a physician is typically given substantial weight in determining a person's disability. *See generally Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Absent good cause clearly articulated by the ALJ, the opinion of a treating physician must be given substantial or considerable weight. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003); *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Good cause to give less than considerable weight to a physician's opinion exists when the opinion is not bolstered by evidence, the record evidence supports a contrary finding, or when the opinion was conclusory or inconsistent with medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ's reasons for discrediting the treating physician's conclusion must be "explicit and adequate." *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991).

ALJ Helmer has provided her reasons for not giving weight to Dr. Patel's undated opinion. As she explained, the opinion was "so brief and conclusory that it [lacked] persuasive weight and [that] it is unsubstantiated by any clinical or laboratory findings." (Tr. 46). Those explanations are sufficiently explicit and adequate. Moreover, as ALJ Helmer also explained, Dr. Patel did not treat the claimant "until almost a year after her date last insured." (*Id.*). Dr. Patel's undated two-sentence statement reads in its entirety, "[Patient] has been disabled due to pulmonary condition since my first visit. 12/29/2009. She has symptoms more then [sic] 2 years before my visit." (Tr. 456). Dr. Patel did not provide any reasoning or evidence whatsoever in support of this opinion. In fact, there is a lack of medical evidence to support Dr. Patel's claim, both in terms of her lack of pulmonary medication through 2008, and her lack of treatment from February 2007 and December 2008. (*Id.*). The only concrete medical evidence on her respiratory illnesses is found in Dr. Smith's assessment in January 2007. At that time, Dr. Smith found Plaintiff "does not have any other significant ongoing medical problems that she is aware of" besides her digestive issues. (Tr. 46). Thus, in addition to being wholly conclusory and incredibly retrospective, Dr. Patel's opinion on her disability is contradicted by other medical evidence.

Finally, even if Dr. Patel's opinion as to the timeline of Plaintiff's disability were not conclusory, and even if it was supported by some medical evidence, it would still not be controlling. The ALJ is not required to give controlling weight or significance to a treating physician's opinions on certain issues, such as whether the claimant is disabled; these are administrative findings reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(3); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). Opinions such as Dr. Patel's may certainly add context and clarify the extent of

a claimant's illnesses. But such opinions, even when coming from a "treating physician," may not usurp the role of the ALJ in determining whether a claimant meets the established guidelines to be considered disabled.

### F.     ALJ Helmer Was Under No Obligation to Further Develop the Record

Plaintiff also argues that the ALJ did not properly and fully develop the record as required by 20 C.F.R. §§ 404.1519a(b) and 416.919a(b). (Pl.'s Mem. 15-16). The court rejects that assertion. An ALJ "may" purchase a consultative examination to resolve an inconsistency or supplement insufficient evidence. To be sure, in certain circumstances, when needed medical evidence is not readily available and a lack of such evidence would skew the view of the case and make it impossible to determine whether the decision is supported by substantial evidence, an ALJ should obtain a consultative examination. *See* 20 C.F.R. §§ 404.1517 and 416.917; *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986). This is part and parcel of the ALJ's duty to ensure that the record is fully and fairly developed.

But there are limits to this principle. An ALJ's obligation to develop a full and fair record extends to the twelve months prior to the claimant's filing of her application. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Otherwise, the ALJ has no duty to order additional medical evidence when there is otherwise sufficient evidence to make a determination on the claimant's claim. *See generally Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). And, an ALJ is not responsible for actively assisting the claimant in fulfilling her burden of proof or otherwise acting as her counsel. *See Ellison* 355 F.3d at 1276. *See also Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).

There is absolutely no evidence to support Plaintiff's assertion that the record below was not properly developed. ALJ Helmer did not have an obligation to seek medical records prior to

the twelve month period preceding Plaintiff's filing of her application. Plaintiff filed her application on April 14, 2010. The ALJ's responsibility ranges from that date backwards to April 14, 2009, over four months past her date last insured. Moreover, here, Plaintiff has not specified what kind of evidence during this period, if any, may be useful. ALJ Helmer was under no obligation to gather the medical records that Plaintiff had the duty to provide. *See* 20 C.F.R. § 404.1519a(b).

Similarly, ALJ Helmer was under no obligation to order a consultative examination of Plaintiff because the record, as it stood, was more than sufficient to make a determination as to Plaintiff's disability and her inability to meet the standards of 3.02A. Nothing in Plaintiff's medical records indicates that she experienced any major breathing issues prior to her date last insured. (Tr. 36, 41, 521). The medical expert, Dr. Anderson, testified that, based on her medical record, she did not meet or equal a listing and could perform light work. (Tr. 37, 46, 59-60). The medical evidence that does exist does not indicate any significant breathing issues, and is sufficient to support ALJ Helmer's decision that Plaintiff was not disabled.[8]

### G. Substantial Evidence Supports the ALJ Finding that Plaintiff Did Not Meet Listing 3.02

A claimant may satisfy her burden of proving disability by showing that her impairments meet or equal a listed impairment. *See* 20 C.F. R. § 404.1520(a)(4)(iii), (d); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). More specifically:

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."

---

[8] The court notes that any new evidence coming from Dr. Patel or a new consultative examination would be inconsequential to this case, as it would not concern Plaintiff's condition prior to the expiration of her insurance.

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted); *see* 20 C.F.R. §§ 4404.1525, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530-532 (1990). Of course, the evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the five-step process. This is because the listings represent an automatic screening based on medical findings rather than an individual judgment based on relevant factors in a claimant's claim. *See* 20 C.F.R. § 404.1520(d); *Zebley*, 493 U.S. at 532.

Plaintiff failed to meet her burden of establishing that she was presumptively disabled under Listing 3.02A prior to her date last insured, which provides in pertinent part, "Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02A. Plaintiff is 64 inches tall. (Tr. 528). Table I provides that the $FEV_1$ level for individuals 64 inches tall is 1.25. *See id.*

Plaintiff failed to prove her impairments met or equaled the criteria for Listing 3.02A on or before December 31, 2008, her date last insured (Tr. 302, 318). Plaintiff does not identify any records showing an $FEV_1$ level at 1.25 or below at any time on or prior to December 31, 2008 (Pl.'s Br. at 14-16). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02A.

Although Plaintiff points out that a pulmonary function study in January 2010 showed an $FEV_1$ level of 0.88 (an amount significantly less than 1.25), as well as her diagnosis of COPD (Tr. 402-422), this is of no help to her here. That test was conducted well after December 31, 2008, her last date insured. Plaintiff produced no concrete medical evidence showing breathing issues prior to that date.

An impairment that occurs after disability insurance has expired is insufficient to warrant eligibility for disability. *Mason*, 430 F.App'x at 831. Dr. James Anderson, a medical expert,

opined that while Plaintiff likely had some pulmonary symptomology between March 2007 and December 2008, and likely would not have met a listing during that time. (Tr. 60). Moreover, Plaintiff herself testified that her breathing worsened *after* December 2008, and that admission indicates significant deterioration after her date last insured. (Tr. 56). Substantial evidence supports the finding that Plaintiff's ailments did not manifest themselves until well after her date last insured.

### H.      The ALJ Properly Considered All of Plaintiff's Severe Impairments

Finally, Plaintiff argues that some of her ailments – namely, "chronic obstructive pulmonary disease, asthma, severe depression, anxiety with panic attacks, short term memory impairment, and insomnia" -- were not properly considered to be "severe" despite falling within the "slight abnormality" standard of SSR 96-8p. (Pl.'s Mem. 20). Plaintiff contends these other ailments should have been found severe at Step Two.

A person's insured status is key to the determination of entitlement to disability insurance benefits. *See* 20 C.F.R. § 404.101(a); 20 C.F.R. § 404.130(a). To claim Social Security disability benefits, a claimant must show that she was disabled on or before her date last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). That is, Plaintiff must provide evidence of her functional limitations at a time before her date last insured in order to successfully challenge the decision of the Commissioner with regards to denial of disability, as a part of her general burden of proof to proving disability and providing supporting evidence. *Taylor v. Astrue*, No. 1:08CV785–SRW, 2010 WL 920114 (M.D. Ala. Mar. 11, 2010) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Chronological relevancy is key.

Here, there is no evidence to show a diagnosis of COPD, asthma, anxiety, depression, short term memory, or insomnia before Plaintiff's date last insured of December 31, 2008. An

undated letter from Dr. Patel, Plaintiff's treating physician who first saw her a year after her date last insured, is of no aid to her: virtually all of Plaintiff's breathing issues occurred after January 18, 2010, *i.e.*, over a year after her date last insured. (Tr. 402-422). And while Plaintiff complained of shortness of breath in her December 18, 2008 visit to Dr. Barrette, (Tr. 532), she was not actually diagnosed with COPD or asthma until February 8, 2010, long after her date last insured. (Tr. 413).

Similarly, although Plaintiff reported a medical history of depression in her December 2008 visit to Dr. Barrette (Tr. 537), she was not actually diagnosed with depression until July 27, 2010 (Tr. 416), and did not seek treatment until September 27, 2011 (Tr. 426-432), again, well outside the scope of this decision. Plaintiff was not diagnosed with anxiety, short term memory impairment, or insomnia until September 27, 2011, when she began psychological treatment. (Tr. 474-484). Because these later medical records do nothing to indicate disability prior to the date Plaintiff was last insured, the ALJ did not err in her determination.

Finally, and alternatively, even if these ailments could be considered severe as of the relevant period, there still would be no reversible error because the finding of any severe impairment is enough to satisfy the second step of analysis. After finding Plaintiff had severe impairments at Step Two, the ALJ considered the entirety of her condition, not just severe conditions. 20 C.F.R. § 404.1520(e) (stating that the Commissioner will consider all of the claimant's impairments during steps four and five of his evaluation); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 824-25 (11th Cir. 2010); *Burgin v. Comm'r of Soc. Sec.*, 420 F.App'x 901, 902 (11th Cir. 2011). Stated in other words, because at least one severe impairment was found by the ALJ in both cases in the five-step test, Plaintiff successfully moved forward to the steps where all of her potential

impairments would be considered regardless of severity. ALJ Helmer properly acknowledged the existence of Plaintiff's allegations of ailments (even if they were not considered to be severe), and further stated that all of Plaintiff's severe and non-severe ailments were considered when determining whether a listing was met. (Tr. 36-37). Thus, any error in not considering other ailments as severe was harmless.

## VII.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 8, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE